BARNES v. TEXAS & N. O. RY. CO.
(No. 5477.)

(Court of Civil Appeals of Texas. San Antonio. May 26, 1915.)

1. RAILROADS ⊙═➤398—PERSON ON TRACK—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

Evidence in an action for the death of plaintiff's son, killed by a train while walking on the track, *held* to show that the defendant railroad company was not negligent, and to authorize an instructed verdict for defendant.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1356, 1358–1363; Dec. Dig. ⊙═➤398.]

2. RAILROADS ⊙═➤398—PERSON ON TRACK—NEGLIGENCE—PROOF.

In an action for the death of plaintiff's son, who was killed by a passenger train in front of which he stepped while walking toward the engine of a standing freight train, evidence that the headlight on such engine was not hooded did not show that the defendant railroad company was negligent, especially where there was no evidence that failure to have the headlight hooded was the proximate cause of the accident.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1356, 1358–1363; Dec. Dig. ⊙═➤398.]

3. RAILROADS ⊙═➤392—PERSON ON TRACK—NEGLIGENCE.

That the brakeman on a freight train, on observing the approach of a passenger train behind a person walking between the tracks, called to him in a loud voice, "Look out and get out of the way!" and such person thereupon stepped in front of the passenger train and was killed, did not charge the railroad company with negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 902–909; Dec. Dig. ⊙═➤392.]

Appeal from District Court, Liberty County; J. Llewellyn, Judge.

Action by Tabbie Barnes against the Texas & New Orleans Railway Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Marshall & Harrison, of Liberty, for appellant. Hightower, Orgain & Butler, of Beaumont, and Baker, Botts, Parker & Garwood, of Houston, for appellee.

MOURSUND, J. Appellee, on April 24, 1912, sued appellant for damages on account of the death of her son, Stafford Barnes, alleging that her son, at about 8 o'clock p. m., was walking in an easterly direction between the main line and the switch track of the railroad company, about 400 yards west of the depot at Dayton; that at said time and long prior thereto the place where he was walking was commonly and customarily used as a walking place by the public, with the full knowledge, consent, and acquiescence of the defendant; that at said time defendant had standing upon its side track in Dayton a freight train headed in a westerly direction, and the light on said train was not hooded or closed; that it gave a light so bright as to blind the eyes of a person coming in contact therewith from the opposite direction; that at said time Barnes approached to within about 200 feet of the engine of said freight train, and at the same time defendant's passenger train going east upon the main line, and running at the rate of not less than 35 miles per hour, came up behind said Barnes running "without steam"—that is, making no noise with the steam exhaust; that Barnes was in a safe place, but the engineer or fireman on said freight train called out to him in a loud voice, "Look out and get out of the way'!" which caused him to step, from a safe position between said tracks, in front of the passenger train, where he was struck and instantly killed; that Barnes was dazed and bewildered by the light on the freight train to such an extent that he believed said train was moving, and that he was on said track in front of said freight train. Plaintiff further alleged that the rate of speed at which said passenger train was running through Dayton, a thickly populated town, constituted negligence.

The defendant, on July 30, 1912, answered by general denial and plea of contributory negligence on the part of plaintiff. On May 18, 1914, plaintiff by supplemental petition denied that Barnes' death was caused by contributory negligence as alleged by defendant. Judgment was rendered for defendant, pursuant to an instructed verdict.

[1] Dayton, at the time Barnes was killed, was a town of about 1,000 population, but about half of this number lived out at a sawmill west of the town and about half a mile from the defendant's track. The track of the Trinity Valley & Northern Railway Company runs from the mill to within about 150 yards of defendant's track, and then a Y begins, one prong of which runs in an easterly direction towards Dayton, while the other runs in a westerly direction, both connecting with the tracks of defendant. The wagon road was the shortest way from the mill to Dayton, but the railroad track was commonly used, especially in wet weather and at night, and it was testified that at this time the roads were muddy. In using the railroad tracks the shortest way was along the east prong of the Y, and this was the one commonly used by people going from Dayton to the sawmill. The defendant's tracks were fenced on both sides along the Y. Defendant had a switch track between the main track and the Y, and the space between the two tracks was 8 or 10 feet. On this switch track was standing a freight train, headed west. The engine was west of where the east prong of the Y runs into defendant's tracks. Barnes was not coming along the east prong of the Y. He came down the defendant's main track, and when killed was at a point between the two prongs of the Y, where the right of way was not shown to be commonly used by the public. The witnesses did not agree in regard to his location when he was struck; one testifying he was nearer

the east prong than the west, while another thought he was nearer the west prong than the east one. The place where he was killed was about a third of a mile from the west end of the depot.

Henry Green testified that he was between the tender of the freight train and a box car when Barnes came along the track; that when Barnes was about 15 or 20 feet from the engine, and coming towards it, some one inside of the engine hallooed to "Look out!" whereupon Barnes got out of the space between the tracks, and got over in the main track, and never looked back; that No. 8 passenger train, also going east, struck him; that Barnes came down the track with his head down and his hands behind him; that the headlight of the freight engine did not have a hood over it. Said witness testified further:

"I know where those two tracks come out from the lumber mill to Dayton, one east and one west, and he was killed about half way between those two tracks. I have been living in Dayton about a year and a half, working for the Dayton Lumber Company, and people going from Dayton to the sawmill would always go down the Southern Pacific track, and then on the Trinity Valley & Northern track to the mill. The Trinity Valley & Northern is the tramroad that runs from Dayton to Fouts, and people used those tracks customarily, both in dry and wet weather; you could see people down that track all the time."

The train was running at the rate of about 40 miles per hour when it was about 50 or 75 feet from Barnes. It could have been stopped in about 900 feet. It was running "without steam." The signal for the crossing west of Dayton was given, and when the train was close to Barnes four short blasts were given as a warning to him.

The witness Riley Elkins testified that he heard the train whistle when about a half mile from Dayton; that it must have been a crossing whistle; that about 300 or 400 yards from the place he heard the whistle for the crossing he heard the whistle again, describing it as a "kind of distress whistle," and saw the train coming to a stop.

The brakeman on the freight train testified that Barnes was about opposite the engine of the freight train when he was struck. He insisted that Barnes was on the main track when he and the engineer first hallooed at him.

[2, 3] There is no allegation in the pleadings of negligence on the part of defendant on account of discovered peril. Nor is it charged that a lookout should have been kept. In fact, plaintiff's theory is that Barnes stepped from a place of safety upon the track in front of the fast-moving train, at a time when it was impossible for the engineer to save him on account of the speed of the train. The evidence fails to show that the engineer did not see him as soon as he got upon the track and try to warn him by giving four sharp blasts. The evidence fails

to show that running at the rate of 40 miles per hour at a point more than a third of a mile from the depot, where the track was fenced on both sides, constituted negligence, and fails to show that the high speed of the train was the proximate cause of Barnes' death. Conceding that the headlight on the engine of the freight train was not hooded, such fact does not establish negligence. The headlight was required by statute. But, even if it was conceded that the headlight should have been hooded, the evidence fails to show that the failure to have same hooded was the proximate cause of Barnes' death. Plaintiff's theory that Barnes was confused by the headlight into believing that the freight train was moving, or about to move, rests upon no basis furnished by the evidence. It is a mere conjecture. As a matter of fact, if he was 15 or 20 feet east of the engine, but between the tracks, the light could not have blinded him, as it would shine beyond him. It cannot be said that the giving of the warning cry or cries by the brakeman of the freight train constituted negligence. The undisputed evidence shows that the crossing signal was given.

We conclude that the evidence would not support a finding of negligence on the part of the railroad company. It is therefore useless to discuss the question of contributory negligence. The court did not err in instructing a verdict for defendant.

The assignments of error are overruled, and the judgment is affirmed.